## PENNSYLVANIA v. ABERILLA BLACKMORE.

1796.

ON application to me, a writ of *habeas corpus* was directed to *Aberilla Blackmore*, returnable before me, for *Caffandra* and *Lydia*, two *Negro* women, whom she held as flaves. At the return of the writ, the claim appeared to turn on this queftion, whether *Samuel Blackmore*, late hufband of *Aberilla*, was an inhabitant of the county of *Westmoreland*, on 23d *September*, 1780. This being a queftion involving facts afferted and denied, it was agreed, that this fhould be put in the form of an iffue, and be tried in the court of Common Pleas. It was accordingly tried this term; and it was agreed, that the jury fhould return a fpecial verdict, to be drawn up by me. The object of the counfel for *Aberilla Blackmore* was, to have the proceedings removed into the Supreme court, for the opinion of that court on the facts found. Afterwards I propofed, and it was agreed, that, inftead of a fpecial verdict, there fhould be a fpecial return to the *habeas corpus*, ftating all the facts found by the verdict; and that the caufe fhould go up to the Supreme court, on a *certiorari* directed to me, in this fhape, of the writ and return only.

*See act of Affembly, 13th April, 1782.*

The return was as follows:

"In obedience to the within writ, I have here *Caffandra* and *Lydia*, as within required; and as the caufe of their being taken and detained, I certify and return;—That the faid *Caffandra* and *Lydia*, *Negro* women, were flaves to my deceafed hufband, *Samuel Blackmore*, in the ftate of *Maryland*, where he lived, and they with him, as part of his family, before and in the month of *March*, in the year of our Lord one thoufand feven hundred and eighty. That in *March*, 1780, he came into the then county of *Weftmoreland*, in the ftate of *Pennfylvania*, to purchafe land; and on the 24th day of that month, purchafed a tract of land, then in the county of *Westmoreland*, but now in the county of *Wafhington\**, and ftate of *Pennfylvania*, for 22,000*l.* continental money; and gave his bond for this money, which he afterwards paid. That returning to *Maryland*, where his

* *Wafhington* county was erected 28th *March*, 1781.

1796.

family ftill remained, he told one of his neighbours, who was then about to remove, and, in *April*, 1780, did remove thence into the county of *Westmoreland* aforefaid, that he fhould have a certain part of this land; bade him put a fall crop in, if he did not get there in time himfelf; gave him apple-trees to plant; and faid he would be out there himfelf in *September*. That having fold his land in *Maryland*, he, about the middle of *December*, and not before, arrived with his family, at the land which he had bought, then in *Westmoreland*, now in *Wafhington* county, in *Pennfylvania*. *Lydia* was then with him, and *Caffandra* had been fent up about two weeks before, with two of his fons. That from that time, till his death, he continued to refide on this land, with his family, keeping *Lydia* and *Caffandra* part of it as flaves. That 'an act to redrefs certain grievances within the counties of *Westmoreland* and *Wafhington*,'* paffed 13th *April*, 1782, enabling certain inhabitants of thofe counties to regifter their flaves, he regiftered *Caffandra* and *Lydia*, with the clerk of the peace of *Wafhington*, on the 19th day of *December*, in the year of our Lord, one thoufand feven hundred and eighty-two, as follows: (to wit)† ' *Samuel Blackmore*, of townfhip. *Cafs.* a *Negroe* flave, twenty-two years. *Lyddy*, a *Negroe* flave, twenty years.' By virtue of which they are and were claimed and held as flaves, in the ftate of *Pennfylvania*. And this is the caufe of their being fo kept and detained.

ABERILLA BLACKMORE."

The proceedings having been removed into the Supreme court, it was agreed, by the counfel on both fides, that the validity of the return fhould be argued at the next court of *Nifi prius*, in *Wafhington*, and the determination of the claim be made, by the judges then attending.

Accordingly, it was argued before *Yeates* and *Smith*, judges of the Supreme court, on 18th *May*, 1797, at a court of *Nifi prius*, at *Wafhington*.

* This law is not publifhed in *Dallas's* edition of the ftate laws.

† The form of the regiftration was made part of the return, on the application of Mr. *Rofs* at the argument.

*Brackenridge*, for the fufficiency of the return, read the act for the gradual abolition of flavery; and the act, of 13th *April*, 1782, to redrefs certain grievances within the counties of *Westmoreland* and *Wafhington*; and the act confirming an agreement entered into between this state and the ftate of *Virginia*; and made two queftions.

1. Whether the act of 13th *April*, 1782, relates to inhabitants within the counties of *Westmoreland* and *Wafhington*, at the date of the act, or on the 23d *September*, 1780, when the agreement between the two ftates was clofed.

2. Whether *Blackmore* was an inhabitant of *Westmoreland* county, on 23d *September*, 1780.

He contended that, by the purchafe of a tract of land, fending up apple-trees, &c. he became an inhabitant.

As to regiftration, the abolition act is directory only: provided the truth be, that the perfons are regiftered, mere formalities are not regarded. It is a law taking away property, and will be conftrued liberally in favour of the owner not of the flave. In 1780, this country was confidered as *Virginia*, and its inhabitants as not bound by laws of *Pennfylvania*.

*Rofs*, againft the return. The abolition act provided againft *any* introduction of flaves after the date of the act. All brought in after the act, inftantly became free; all born after the act, are declared free at the age of twenty-eight; and the regiftration of flaves then within the ftate is fecured by the penalty on the owner, of lofs of property in any not regiftered according to the directions of the act.

The two *Negroes* in queftion, having been brought into this ftate after the 1ft of *March*, 1780, are free, becaufe not within the ftate on 1ft *March*, 1780, nor, if within it, recorded before 1ft *November*, 1780. The act of 13th *April*, 1782, reciting that "many of the inhabitants of *Weftmoreland* and *Wafhington* counties, conceiving themfelves under the jurifdiction of *Virginia*, had no opportunity of entering or regiftering their flaves, agreeably to the act for the gradual abolition of flavery," enacts, "that it be lawful for all fuch inhabitants of the faid counties, who were, on the 23d of *September*, 1780, poffeffed of *Negro* or *Mulatto* flaves, or fervants until the age of thirty-one years, to regifter fuch flaves or

fervants, agreeably to the directions of the act aforefaid, for the gradual abolition of flavery, on or before the 1ft day of *January* next ; and that the mafter or mafters, owner or owners, of fuch flaves or fervants, fhall be entitled to his, her, or their fervice, as by the faid act is directed ; and the faid flaves or fervants fhall be entitled to all the benefits and immunities in the faid act contained and expreffed."

But this act cannot make thofe *flaves*, who were free under the act of *March*, 1780. And thefe women, having been brought in, after the 1ft *March*, 1780, were free inftantly after their being brought in.  If they became free inftantly after they were brought in, they remain free; for it is not in the power of any law, to make a free man a flave.

The object of the 5th fection of the abolition law was to defcribe the fex and age of the flave, and the trade and refidence of the mafter, fo particularly, that flaves might, at any time, be certainly traced back.  For this purpofe, the directions of the act muft be ftrictly complied with.  But in the regiftry under which this claim to flavery is fupported, there is no townfhip, diftrict, or profeffion of the mafter, nor fex of the flave.  One of thefe *Negroes* is named *Cafs* : This leaves it uncertain whether the perfon be man or woman, or the name *Caffius* or *Caffandra*.  Strong indeed muft be the leaning againft liberty, if without any thing on the record to determine, this court fhall fay, that it was this woman *Caffandra*, who was then regiftered. *Liddy* is fomewhat different.  It is not fo doubtful of what fex this flave was.  But this lefs degree of doubt arifes not, as it ought to do, from the record, but from our knowledge, that there is no name fo like *Liddy*, as *Lydia*, which is a woman's name.

As to the law of 1782, it is certain, that the legiflature is not more the fovereign than the executive is.—— The legiflature is the people acting under a limitation, and can enact no law contrary to the conftitution.  The courts will be vigilant over the laws ; for on the pure adminiftration of juftice, according to the fpirit of the conftitution, our liberty and fafety depend.

Can the legiflature, by a law, declare a free perfon to be a flave, when the conftitution, under whofe authority

they act, declares all men free, and freedom to be an unalienable right ? If they can make one free-man a slave, why not a whole county ? It is no answer to this that he was a slave, and, by an omission, became free ; nor that he is black. All are alike in the sight of God. If he has reason, he is answerable for his conduct. No legislature has such a power over whitemen ; and none, therefore has such power over black.

But it is objected, that it is doubtful, whether these counties were under the jurisdiction of *Pennsylvania.*— It turned out that they were. This was ascertained before *November,* 1780. This was one of the grievances to be remedied. But there was no power in the legislature, to give the remedy attempted. As well might they have made a law to introduce, as slaves, after the peace, slaves of *Pennsylvanians,* absent with their masters in the army. *Samuel Blackmore* could have been in no uncertainty. He was not here. He was in *Maryland,* and had no slaves here to register on the 23d *September,* 1780, or the 1st *November,* 1780. It was not on such, that the law of 1782 was to operate ; but on such as, on the 23d *September,* 1780, were inhabitants of the disputed territory. On the 23d *September,* 1780, the dispute ceased, and it was no longer doubtful, whether *Pennsylvania* or *Virginia* had jurisdiction ; but certain, that the laws of *Pennsylvania* were to govern every man here. The law of 1782 was not then made ; *Samuel Blackmore* was not then here ; and, coming in afterwards, he brought in his *Negroes* under the operation of the law of 1780 ; by that law, they became free immediately after their arrival here ; and being once free, they must so remain.

Having land here does not make an inhabitant. Inhabitants of *Europe* have land here. Intention does not make fact. Intending to be a resident is not being a resident.

I hope the court will construe these acts liberally in favour of liberty, and strictly against the owner, who does not pursue the injunctions of the law. As the claim of slavery is so contradictory to the principles of reason and nature, I hope the court will go as far as possible, to reconcile them, and say, there shall be no slavery, but where every particular of the law is complied with.

1796.

If this were the cafe of white women, the conftruction would be liberal. It muft be fo, in the cafe of black women. There cafe is worfe than that of criminals.— They, confined for a few years, have the profpect of liberty at laft. Thefe never. Were an *American* prifoner in *Algiers*, claiming the benefit of a law there, which declared free all flaves not fpecially regiftered, to be told, that fuch law was a mere formality, what fhould we think of that country ? Should it be told in *Algiers*, that we have a conftitution, which declares all men free, and a law to regifter the name and fex of every flave ; they would afk, " Why complain of us ? If by that law, free men are declared flaves, why do you boaft of a conftitution ?"

I argue this cafe without any recompence, but that which every man finds, in the fatisfaction of doing a good action. And I am confident, that this court will take hold of the leaft flaw, to reftore thefe women to the unalienable rights of nature.

*Brackenridge*, in reply. On principles of nature, there can be no flavery. But we live under an exprefs conftitution ; and on conftitutional principles, there can be no flave, for the conftitution declares all men born free ; and the queftion is, Are thefe of the human fpecies ?— Another fection protects property : this was a fpecies of property ; and the protection of the conftitution is claimed for it.

Such conftruction will be given, as to render the whole confiftent ; and the conftruction will be *fecundum fubjectam materiam.* Thefe fections relate only to the parties to the contract. Thefe *Negroes* were not parties to it ; they were none of the people. If it apply to all men, and a *Negro* be a man, there is an end of the queftion. If *Negroes* be property, this can only be taken away by confent of the owner.

The compact between the ftates of *Pennfylvania* and *Virginia* was *in fieri*, till 1784 ; and the act of 1782 was made, not to *correct*, but to *prevent*, a grievance. The refolution for accepting the ceffion was not a law ; for the ftile of laws is, Be it enacted, &c. 2 *St. L.* 207.

To give perfect relief, the act of 1782 ought to be conftrued as applying to the inhabitants *at the date of the act* ; becaufe the boundary was not then run, nor the ceffion complete.            U

As to refidence, he had bought land, with intention to remove, and refide on it ; he had fent out an agent, apple-trees, &c. He was no longer an inhabitant of *Maryland.*

Next day, the judges delivered their opinion, that the *Negroes* were free.